## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD FOX | ) | CASE NO. 3:24-cv-1622 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOUND FEDERAL CREDIT UNION, ET AL., | ) | JANUARY 21, 2025 |
| | ) | |
| *Defendants*. | | |

## MEMORANDUM OF DECISION
## RE: PLAINTIFF'S MOTIONS TO REMAND (ECF NOS. 21, 24)

Kari A. Dooley, United States District Judge:

Plaintiff Edward Fox ("Plaintiff" or "Fox"), a citizen of Connecticut, commenced this action in the Superior Court of the State of Connecticut against Defendants Sound Federal Credit Union ("SFCU"), Faith Fuller-Hayden, Rosa Campo, and Whittlesey PC (collectively, the "Defendants"). In his initial Complaint,[1] Plaintiff asserts eight causes of action: (1) breach of contract (against SFCU); (2) failure to pay wages, pursuant to the Connecticut Wage Act, Conn. Gen. Stat. § 31-72 (against SFCU); (3) wrongful termination (against SFCU), (4) violation of good faith and fair dealing obligations (against SFCU); (5) defamation (against SFCU); (6) negligence (against Fuller-Hayden and Campo); (7) negligence (against Whittlesey PC); and (8) violation of the Connecticut Unfair Trade Practices Action, Conn. Gen. Stat. § 42-110, *et seq*. ("CUTPA") (against SFCU).[2] Consistent with Connecticut practice, Plaintiff did not identify a specific amount of damages sought, only asserting that the amount in demand was in excess of fifteen thousand dollars. *See* ECF No. 1 at 22. Service of the Summons and Complaint was made upon Defendants

---

[1] A copy of Plaintiff's initial Complaint is attached to Defendants' Notice of Removal, ECF No. 1.

[2] On December 5, 2024, Plaintiff filed the first Amended Complaint ("FAC"), which no longer asserts wrongful termination or CUTPA claims against SFCU, but otherwise asserts the same remaining causes of action as the initial Complaint. *See* ECF No. 23. Insofar as the FAC completely replaces the initial Complaint, the Court has considered the Motions to Remand in the context of the allegations set forth in the FAC.

SFCU, Fuller-Hayden, and Campo on September 20, 2024.[3]  *See id.* at 2.  Defendant Whittlesey PC was served with the Summons and Complaint on September 27, 2024.  *See Fox v. Sound Federal Credit Union, et al.*, No. HHB-CV24-6090425-S, Doc. No. 100.30.

On October 10, 2024, Defendants SFCU, Fuller-Hayden, and Campo removed this case to federal court, on the asserted basis that Plaintiff's claims derive from an employee welfare benefit plan governed—and completely preempted—by the Employee Retirement Income Security Act of 1974 ("ERISA").  *See generally* ECF No. 1.  Pending before the Court are Plaintiff's two Motions to Remand, one as to Defendants SFCU, Fuller-Hayden, and Campo (ECF No. 21), and one as to Defendant Whittlesey PC (ECF No. 24).[4]  Plaintiff principally argues that Defendants' removal was improper, insofar as he brings breach of contract and other tort claims which are not "substantially dependent upon or inextricably intertwined with analysis of the terms of an ERISA-governed benefits plan."  *See* Plaintiff's Motion to Remand ("Pl. MTR I"), ECF No. 21.  Plaintiff further argues that because Whittlesey PC did not express its consent to removal within the statutory period, this Court lacks jurisdiction over the controversy between Plaintiff and Whittlesey PC.  *See* Plaintiff's Motion to Remand as to Whittlesey PC ("Pl. MTR II"), ECF No. 24.  On December 12, 2024 and December 27, 2024, respectively, Defendants filed their opposition to the Motions to Remand.  *See* Defendants SFCU, Fuller-Hayden, Campo Opposition ("Defs. Opp."), ECF No. 26; Defendant Whittlesey PC Opposition ("Whittlesey Opp."), ECF No. 30.  Plaintiff filed his respective reply briefs on December 26, 2024 and January 7, 2025.  *See* ECF Nos. 28, 31.

---

[3]  Counsel for Whittlesey PC did not appear in this action until November 19, 2024, the date on which counsel has stated he first learned that the case had been removed from New Britain Superior Court.  *See* ECF Nos. 18, 19.

[4]  Defendants SFCU, Fuller-Hayden, and Campo, as well as Defendant Whittlesey PC, also filed Motions to Dismiss, *see* ECF Nos. 17, 22, which the Court thereafter denied as moot in light of the FAC.  *See* ECF No. 25.

For the reasons that follow, Plaintiff's Motion to Remand as to Defendants SFCU, Fuller-Hayden, and Campo is **GRANTED**, and accordingly, Plaintiff's Motion to Remand as to Defendant Whittlesey PC is **DENIED as moot**.

**Allegations**

The following allegations are set forth in the FAC, and are assumed to be true for purposes of the instant Motions to Remand.

On September 9, 2019, Plaintiff accepted the position of President/CEO of SFCU. FAC, ECF No. 23, at ¶ 9. Plaintiff's employment with SFCU was governed by a written employment agreement which included, *inter alia*, a "Split Dollar Agreement" that "provided a significant executive benefit plan, including the funding of a life insurance policy valued at approximately $1,950,000." *See id.* at ¶¶ 10, 13, 15. During his first three years as President/CEO of SFCU, Plaintiff consistently received excellent performance reviews. *Id.* at ¶¶ 16–20.

In 2024, despite Plaintiff's continued excellent performance, SFCU initiated an investigation into "purported accounting improprieties and 'hostile work environment' complaints." *Id.* at ¶ 24. At the conclusion of its investigation, on April 30, 2024, SFCU terminated Plaintiff "for cause," citing his failure to be "honest, accurate and complete" in his interactions with SFCU's Board of Directors regarding SFCU's sale of "the 61 Jessup Road Property," as well as his contribution to the "creation and maintenance of a negative, hostile, and intimidating work environment at SFCU." *Id.* at ¶ 25.

According to Plaintiff, his termination "for cause" was pretextual, and unlawfully denied him the wages and benefits of his employment agreement. *Id.* at ¶¶ 27, 42. Specifically, Plaintiff alleges that the accounting treatment and reporting for the 61 Jessup Road transaction was expressly authorized by Defendant Fuller-Hayden, in her capacity as CFO of SFCU, after

consultation with Defendant Whittlesey PC, SFCU's accounting firm. *Id.* at ¶¶ 32–36. Additionally, Plaintiff asserts "that [SFCU's] hostile work environment allegations were likewise pretextual and in any event did not constitute legally sufficient 'cause' for termination." *Id.* at ¶ 39.

Broadly, Plaintiff alleges that SFCU breached his employment contract by wrongfully terminating him and failing to pay his wages and benefits as required by law. Plaintiff further alleges that statements included in his termination letter were defamatory, and that Defendants Fuller-Hayden, Campo, and Whittlesey PC were negligent in their role in the accounting of the 61 Jessup Road transaction, which led to Plaintiff's termination.

**Legal Standard**

Federal courts are courts of limited jurisdiction, *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000), having subject matter jurisdiction over only matters in which a federal question is raised or there is diversity of citizenship between the parties. *See* 28 U.S.C. §§ 1331, 1332. As relevant here, federal question jurisdiction exists where the action "aris[es] under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, "a suit 'arises under' federal law. . . 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).

Pursuant to 28 U.S.C. § 1441(a), a defendant in a state court civil action may remove the case to federal court if it is an action over which federal district courts have original jurisdiction.[5] If a case is removable on the face of the initial pleading, then a defendant must file the notice of

---

[5] There are exceptions to this general proposition not applicable here.

4

removal "within 30 days of receipt . . . of a copy of the initial pleading . . . or within 30 days after the service of summons . . ." 28 U.S.C. § 1446(b)(1).

**Discussion**

As indicated, Defendants removed this matter asserting that Plaintiff's claims are pre-empted by ERISA, thus bringing the claims within this Court's federal question jurisdiction. *See e.g., Aetna Health Inc., v. Davila*, 542 U.S. 200, 207–08 (2004). In his Motions to Remand, Plaintiff principally argues that this Court lacks federal question jurisdiction over his state law claims, which he argues are "not substantially dependent upon or inextricably intertwined with analysis of the terms of an ERISA-governed benefits plan." *See* Pl. MTR I at 4. Rather, Plaintiff asserts that his claims stem from SFCU's breach of Plaintiff's employment agreement, and not the underlying ERISA-governed Split Dollar Agreement. *Id.* at 8–9. Plaintiff further argues that remand as to his claims against Defendant Whittlesey PC is warranted because Whittlesey PC did not join in or consent to the initial removal. *See* Pl. MTR II, ECF No. 24, at 3. In response, Defendants argue that removal was proper because Plaintiff expressly seeks payment of benefits allegedly due under the ERISA-governed Split Dollar Agreement, and therefore, his claims fall within the scope of ERISA's civil enforcement scheme. Defs. Opp., ECF No. 26, at 5–8. The Court agrees with Plaintiff.

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Davila*, 542 U.S. at 208. Section 502(a)(1)(B) of ERISA allows an individual to "recover benefits due to [him] under the terms of [his] plan, to enforce [his] rights under the terms of the plan, or to clarify [his] rights to future benefits under the terms of the plan." 28 U.S.C. § 1132(a)(1)(B). In *Davila*, the Supreme Court held that "[a]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear

congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." 542 U.S. at 209.  To establish that a state law claim is completely preempted by ERISA, the removing defendant(s) must demonstrate both that: (a) the plaintiff, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B); and (b) there is no other independent legal duty that is implicated by the defendant's actions.  *Id.* at 210; *see also Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011).  Stated differently, "if the defendants' asserted liability under the original complaint does not derive from the particular rights and obligations established by any benefit plan, but rather from a separate promise that references various benefit plans, the allegations in support of that asserted liability do not support a finding of ERISA preemption." *Grof-Tisza v. Hous. Auth. of City of Bridgeport*, No. 3:11-CV-149 (JBA), 2011 WL 1775992, at *1 (D. Conn. May 10, 2011) (citing *Stevenson v. Bank of New York Co.*, 609 F.3d 56, 60–61 (2d Cir. 2010)) (quotation marks and alterations omitted).

Here, the parties do not dispute that the Split Dollar Agreement is a plan governed by ERISA, or that ERISA preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy."  *Davila*, 542 U.S. at 209.  Instead, the parties disagree as to whether Plaintiff's state law breach of contract claim is sufficiently independent of Plaintiff's enforcement of the ERISA-governed Split Dollar Agreement, such that preemption is not implicated.

The Court agrees with Plaintiff that the Split Dollar Agreement is not at the heart of this matter, or even the basis upon which Plaintiff seeks relief.  Plaintiff's claim is principally that he was wrongfully terminated in violation of his employment contract and that the stated "cause" for his termination was pretextual.  He brings related claims of breach of the covenant of good faith and fair dealing; state law wage claims; and defamation claims.  In the FAC, Plaintiff does not

6

seek coverage and benefit determinations under the terms of the Split Dollar Agreement; instead, Plaintiff asserts that as a consequence of SFCU's breach of his employment agreement, he was deprived of the benefits due thereunder and otherwise suffered substantial financial loss, including, but not limited to, compensation under the Split Dollar Agreement.  Determining liability for these claims rests primarily on the Court's consideration of the facts and circumstances of Plaintiff's termination as President/CEO of SFCU, not on the rights and obligations he may have had under the Split Dollar Agreement.  *See Grof-Tisza*, 2011 WL 1775992 at *1 (remanding where the specifics of an ERISA-governed benefits plan "would be invoked only in the determination of damages if [p]laintiff were to succeed in demonstrating" defendants' liability on plaintiff's state law claims). Moreover, that the Split Dollar Agreement is part of the compensation package contemplated in Plaintiff's employment agreement does not itself render Plaintiff's state law claims preempted by ERISA.  *See id.*; *see also Handlowitch v. Verizon Commc'ns, Inc.*, No. 18-CV-617 (RJS), 2019 WL 1789708, at *3 (S.D.N.Y. Apr. 24, 2019) ("Defendant must prove that its actions implicated no legal duty independent of ERISA, such that its potential liability 'derives entirely from the particular rights and obligations established by the benefits plan.'") (quoting *Davila*, 542 U.S. at 213–14).

Defendants argue that "Plaintiff's claim for damages under the Split Dollar Agreement necessarily requires interpretation of the Split Dollar Agreement," which is cognizable only under ERISA's civil enforcement remedy.[6]  But Defendants misapprehend Plaintiff's claims.  Neither

---

[6] Defendants additionally emphasize that "cause" is a term of art specifically defined by the Split Dollar Agreement. But Plaintiff has not alleged that SFCU lacked "cause" to terminate him as the term is defined by the Split Dollar Agreement.  Moreover, as discussed herein, Plaintiff does not seek coverage and benefit determinations under the terms of the Split Dollar Agreement.  Rather, Plaintiff broadly asserts that SFCU wholly lacked any cause to terminate his employment, due to the purported negligence of Defendants Fuller-Hayden, Campo, and Whittlesey, as well as his belief that SFCU's hostile work environment allegations were pretextual.  As such, the Court is not persuaded that the question of "cause" for Plaintiff's termination must be evaluated and interpreted using the Split Dollar Agreement's definition, or that the mere definition of "cause" in the Split Dollar Agreement resolves the preemption issue.

the initial Complaint nor the FAC expressly seek to enforce the terms and rights of the Split Dollar Agreement itself. *Cf. Curcio v. Hartford Fin. Servs. Grp.*, 469 F. Supp. 2d 18, 23 (D. Conn. 2007) (denying motion to remand on ERISA preemption grounds where plaintiff's quantum meruit claim "unequivocally [sought] severance benefits" under an ERISA-governed severance plan).[7]  In fact, Plaintiff has separately submitted a formal claim for benefits under the Split Dollar Agreement pursuant to its administrative claims and review process, which, in the Court's view, only supports the conclusion that Plaintiff is not seeking to enforce the Split Dollar Agreement in this case. *See* Defs. Opp., Exhibit C, ECF No. 26-3.

In sum, because Plaintiff's breach of contract claim implicates a legal duty independent of ERISA, and because benefits purportedly due under the Split Dollar Agreement are germane only to the question of damages should Plaintiff prevail on his breach of contract claim, the claim is not completely preempted.  Absent any other asserted basis for subject matter jurisdiction, this case must be remanded back to state court.

Whittlesey PC

Plaintiff further argues that his claims against Whittlesey PC should be remanded because Whittlesey did not consent to the initial removal of this action. *See* Pl. MTR II, ECF No. 24.  In response, Whittlesey PC contends that if Plaintiff's Motion to Remand as to the remaining Defendants is otherwise denied, the Court should exercise supplemental jurisdiction over

---

[7]  In *Curcio*—a case upon which Defendants rely heavily—the plaintiff's quantum meruit claim alleged that "[a]s a result of her years of service and position with the Company the [p]laintiff had accumulated credits toward severance benefits from the Company, including Notice Pay, Transition Allowance and severance pay. The Company has failed or refused to make these payments to [p]laintiff." *See* 469 F. Supp. 2d at 21.  Conversely, here, Plaintiff's breach of contract claim broadly asserts only that SFCU breached his employment contract, resulting in "substantial financial loss, including lost wages, benefits, and compensation under the Split Dollar Agreement." FAC at ¶¶ 42–43.  And in *Curcio*, the Court aptly observed that "Plaintiff's characterization of Count 6 as just using [defendant's] severance plan benefits as a measure of her damages is circular – the amount of those benefits is not an accurate measure of damages . . . unless she was in fact entitled to those benefits under the Plan," which was the determination of liability she sought in Count 6. *Curcio*, 469 F. Supp. 2d at 23.  Such is not the case here.

Plaintiff's claims against Whittlesey PC pursuant to 28 U.S.C. § 1367, notwithstanding its failure to consent to removal.  *See* Whittlesey Opp., ECF No. 30, at 3–5.  Consistent with the Court's foregoing determination that Plaintiff's breach of contract claim against Defendants SFCU, Fuller-Hayden, and Campo is not preempted by ERISA, this action is being remanded to New Britain Superior Court in its entirety, for lack of subject matter jurisdiction.  As such, the Court concludes that the issues of Whittlesey PC's consent to removal and/or the Court's exercise of supplemental jurisdiction are moot.

**Conclusion**

For all of the foregoing reasons, Plaintiff's Motion to Remand as to Defendants SFCU, Fuller-Hayden, and Campo is **GRANTED**, and Plaintiff's Motion to Remand as to Whittlesey PC is **DENIED as moot**.  The Clerk of Court is directed to remand this case in its entirety back to Connecticut Superior Court, New Britain Judicial District, where it was originally filed.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of January 2025.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE